**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CRISTIAN M'BAGOYI,** | **:** | |
| **Petitioner** | **:** | **CIVIL ACTION NO. 19-1717** |
| **v.** | **:** | **(JUDGE MANNION)** |
| **WILLIAM P. BARR, et al.,** | **:** | |
| **Respondents** | **:** | |

**MEMORANDUM**

Petitioner is an undocumented immigrant, who entered into the United States over nineteen (19) years ago. He has no criminal history. He is a husband to a United States citizen, a father of four young children and a working taxpayer employed as a carpenter with the New York Convention Center Operating Corporation, Jacob K. Javits Convention Center, for over thirteen (13) years. As exhibited by the sixty-one pages of testimonials presented with this action, he is cherished in his community as a leader, friend and mentor. On September 27, 2019, the petitioner was taken into custody and detained by Immigration and Customs Enforcement ("ICE") officers for the purpose of executing his final order of removal. The petitioner has come to this court seeking a stay of his removal while he exhausts his right to apply for a waiver to legalize his immigration status and while he exhausts the process of a motion to reopen his immigration proceedings. In considering these requests, the court finds that the petitioner is entitled to relief as to his former request, but that the court lacks jurisdiction to consider

the latter.

By way of relevant background, the petitioner, Cristian M'Bagoyi, is a native and citizen of Angola, who was admitted into the United States on April 8, 2000, as a B-2 Visitor for Pleasure with authorization to remain in the United States until October 7, 2000. Shortly after his arrival in the United States, on April 13, 2000, the Canada Border Service Agency admitted the petitioner into Canada to allow him to pursue an application for refugee status. That application was denied on April 23, 2001. On March 5, 2003, the petitioner was returned to the United States by Canadian immigration authorities pursuant to a reciprocal agreement between the countries.

On the day he was returned to the United States, the petitioner was served with a Notice to Appear by the Immigration and Naturalization Service ("INS"). Although the petitioner filed various applications for relief from removal, on September 22, 2003, an immigration judge ("IJ") denied those applications and ordered the petitioner removed from the United States. The petitioner appealed the decision of the IJ to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on January 27, 2004. Based upon ICE's inability to secure a travel document for the petitioner's removal, on March 24, 2004, the petitioner was released from ICE custody on an order of supervision.

On August 29, 2008, a Petition for Alien Relative (Form I-130) was filed

with United States Citizenship and Immigration Services ("USCIS") on the petitioner's behalf by his then wife. That petition was granted by USCIS on April 9, 2009. After approval of the Form I-130 petition, on July 9, 2009, the petitioner filed a motion to reopen his immigration proceedings with the BIA, which was denied on September 7, 2010.

On March 15, 2013, the petitioner filed a Petition for Amerasian, Widow(er), or Special Immigrant (Form I-360) with USCIS. On September 22, 2013, that petition was approved and the petitioner held an I-360 Visa between then and March 5, 2015, when USCIS revoked the petitioner's Visa. Shortly thereafter, on April 27, 2015, the petitioner was arrested by ICE agents who processed him and served him with a Warning for Failure to Depart (Form I-229(a)).

On May 6, 2015, the petitioner filed a second motion to reopen his immigration proceedings and for a stay of removal. The BIA denied the motion to stay that same day and subsequently denied the motion to reopen on June 9, 2015.

On September 9, 2015, the petitioner filed a petition for writ of habeas corpus in the United States District Court, District of New Jersey, challenging his continued detention pending removal. On October 23, 2015, rather than respond to the petition, ICE released the petitioner from detention under an order of supervision and the habeas petition was dismissed. Again, the basis

for the petitioner's release was ICE's inability to secure a travel document that would allow the petitioner's removal. In the meantime, between May and September 2015, while the petitioner was apparently still detained in ICE custody, he was served with additional warnings for failure to depart.

On December 1, 2016, the petitioner's second wife filed an Form I-130 on his behalf. This petition was approved by USICS on March 19, 2018. After this approval, the petitioner provides that he and his spouse "began gathering the requisite documents to apply for a waiver of his removal order." However, prior to the petitioner applying for a waiver, on September 19, 2019, the petitioner's order of supervision was revoked by ICE based on the issuance of a travel document, and on September 27, 2019, the petitioner was arrested and detained by ICE for the purpose of executing his final order of removal. That same day, the petitioner filed a third motion to reopen his immigration proceedings and a request for stay of removal. To date, there is no indication that the BIA has acted upon the petitioner's third motion to reopen or his motion to say removal. Additionally, the petitioner attempted to file an Application for Permission to Re-apply for Admission into the United States after Deportation or Removal (Form I-212) in both the Department of Homeland Security's ("DHS") New York field office and its Philadelphia field office. The petitioner contends, however, that neither office would accept the application for waiver.

On October 2, 2019, the petitioner filed the instant petition for writ of habeas corpus and complaint for declaratory and injunctive relief. (Doc. 1). That same day, the court enjoined and prohibited the respondents from removing or causing the removal from the United States of the petitioner and stayed any removal until further order of court. (Doc. 3). The respondents were further enjoined and prohibited from transferring or causing the transfer of the petitioner from the jurisdiction of this court while these proceedings are pending and until further order of court. Finally, the respondents were directed to show cause why the habeas petition should not be granted and the petitioner should not be released from custody. A determination as to whether a hearing on the petition would be scheduled was deferred pending briefing by the respondents. On October 7, 2019, the respondents filed their response to the show cause order. (Doc. 6). Upon review, the court finds that a decision on the pending petition can be made on the record before the court without a hearing.

The petitioner brings this petition pursuant to the provisions of 28 U.S.C. §2241; the All Writs Act, 28 U.S.C. §1651; the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), 5 U.S.C. §701; and Article I, Section 9, Clause 2 of the United States Constitution (the "Suspension Clause"). The petitioner asserts that his current detention constitutes a severe restraint on his individual liberty such that he is in custody in violation of the

Constitution or laws of the United States. He further asserts that his arrest, detention and removal violate, and would violate, the INA, the APA and the Constitution's due process guarantees. As a result, the petitioner requests that this court stay his removal from the United States until he exhausts his right to seek a provisional unlawful presence waiver. He further requests that the court stay his removal from the United States until he fully exhausts the process of a motion to reopen his immigration proceedings. Finally, the petitioner seeks an order for his immediate release from custody.

The petitioner is not the first to bring a habeas action and request injunctive relief requesting the right to pursue the provisional waiver process. Other courts have recently had the opportunity to consider such matters. In one of the most recent cases, the background of the provisional waiver process and the process itself have been summarized,

> An alien "who has been ordered removed" is inadmissible for re-entry to the United States for five, ten, or twenty years from the date of departure or removal, depending on whether the alien is removed upon arrival, is removed after arrival, has already been removed once before, or has been convicted of an aggravated felony.1 8 U.S.C. §1182(a)(9)(A)(i-ii); 8 C.F.R. §212.2(a). An alien who remains "inadmissible" is ineligible to receive a visa to be admitted to the United States as a lawful permanent resident. 8 U.S.C. §1182(a). This inadmissibility may be waived by the Secretary of Homeland Security's consent to reapply for admission, 8 U.S.C. §1182(a)(9)(A)(iii), but the waiver application process can take well over a year, 78 Fed. Reg. 536-01, 536 (Jan. 3, 2013). Prior to 2013, an alien who wanted to seek lawful permanent resident status and apply for this waiver of admissibility was required to first depart from the United States.

> Id.
>
> In 2013, recognizing that undocumented immediate family members of citizens who were living in the United States were choosing to forego applying for visas rather than be separated from their families for at least a year, and potentially longer, the Department of Homeland Security ("DHS") promulgated a rule "to allow certain immediate relatives of U.S. Citizens who are physically present in the United States to request provisional unlawful presence waivers prior to departing from the United States for consular processing of their immigrant visa applications." Id. ("[M]any immediate relatives who may qualify for an immigrant visa are reluctant to proceed abroad to seek an immigrant visa."). The rule was expressly promulgated to "significantly reduce the time that U.S. citizens are separated from their immediate relatives," Id., and to "encourage immediate relatives who are unlawfully present to initiate actions to obtain an immigrant visa to become [lawful permanent residents]," Id. at 567. In 2016, DHS promulgated another rule extending eligibility for these provisional unlawful presence waivers to aliens with final removal orders. 81 Fed. Reg. 50244.
>
> The process requires first filling out a Form I-130, which establishes a qualifying relationship to a U.S. citizen. 78 Fed. Reg. 536-01 at 547-48. After the Form I-130 is approved, the individual must file a Form I-212, which requests a waiver of inadmissibility and, pursuant to 8 C.F.R. §212.2(j), can be conditionally approved while the individual remains in the United States. 78 Fed. Reg. 536-01 at 547-48. Once the I-212 is conditionally approved, the individual must complete Form I-601A, an application for a provisional unlawful presence waiver. Id.; see also 8 C.F.R. §212.7(e)(4)(iv). Once the waiver is approved, the individual departs from the United States to obtain the immigrant visa, executing the prior removal order. See 8 U.S.C. §1101(g).

Wanrong Lin v. Nielsen, 377 F. Supp. 3d 556, 560-61 (D. Md. 2019).

This is the provisional unlawful presence waiver process the petitioner seeks to pursue, but claims he is being denied the right to do so through his

detention and imminent removal. Therefore, the petitioner is seeking a stay of his removal and an order releasing him from custody from this court while he proceeds through this waiver process. However, before considering the petitioner's claims and whether he is entitled to the relief he seeks, the court must first address the respondents' argument that this court lacks jurisdiction pursuant to 8 U.S.C. §1252.

Again, the issue of whether §1252 strips a district court of jurisdiction where a petitioner seeks a stay of removal and an order releasing him from custody until he exhausts the process of obtaining a provisional unlawful presence waiver has been addressed before, with the considering courts splitting on the issue. In carefully considering the cases discussing the issue, this court agrees with those courts which have found that §1252 does not strip the district court of jurisdiction over such matters. See e.g., De Jesus Martinez v. Nielsen, 341 F.Supp.3d 400 (D.N.J. 2018); Villavicencio Calderon v. Sessions, 330 F.Supp.3d 944 (S.D.N.Y. 2018). See also You, Xiu Qing v. Nielsen, 321 F.Supp.3d 451 (S.D.N.Y. 2018). In each of these cases, the reviewing district court found that §1252 does not strip a district court of jurisdiction under these circumstances. In so finding, the courts recognized that §1252 strips federal court jurisdiction over "any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders

against any alien under this chapter." 8 U.S.C. §1252(g).[1] It was argued that a request for stay of removal pending exhaustion of the waiver process interfered with the execution of a removal order. However, the courts in the foregoing cases found that the challenge raised by the petitioners in those cases was not to ICE's prosecutorial discretion in executing removal orders, but to the legal authority of ICE to exercise such discretion when the subject of the removal order also has a right to seek relief made available by the DHS, the specific purpose of which was to allow families to stay together in the United States during the process. See De Jesus Martinez, 341 F.Supp.3d at 406 (quoting Villavicencio Calderon, 330 F.Supp.3d at 954; You, Xiu Qing, 321 F.Supp.3d at 456-58). Like each of the petitioners in the foregoing matters, the petitioner here is not challenging ICE's prosecutorial discretion to execute its removal order against him, but is seeking a review of its authority to detain and remove him before he has the opportunity to complete the provisional waiver process which he began when he filed his Form I-130. In fact, the petitioner does not challenge the validity of his removal order at all in this action, and he concedes that the waiver process may not end favorably

---

[1]Section 1252(g) provides, in relevant part, "[e]xcept as provided in this section and nothwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

for him and, if it does not, this will ultimately result in his removal. However, the petitioner argues that he has a right to proceed with the waiver process that has been created to allow an otherwise eligible individual who is an immediate relative of a United States citizen, and who lives in the United States with a final order of removal, to pursue the process of obtaining the required waiver, while in the United States. This court agrees that, since the petitioner is not challenging the execution of his removal order, but only the legal authority to detain and attempt to remove him before he finishes the provisional waiver process, §1252(g) does not strip the court of jurisdiction over this matter.

Further, to the extent that the respondents argue that jurisdiction is barred by §§1252(a)(5)[2] and (b)(9)[3], which strip federal courts of jurisdiction to review "direct" or "indirect" challenges to an order of removal, the Third

---

[2]Section 1252(a)(5) provides, in relevant part, "Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter."

[3]Section 1252(b)(9) provides, in relevant part, "With respect to review of a final order of removal under subsection (a)(1), . . . [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . to review such an order or such questions of law or fact."

Circuit has held that "only challenges that directly implicate the order of removal" are reserved to the circuit courts. See Nnadika v. Attorney Gen. Of U.S., 484 F.3d 626, 632-33 (3d Cir. 2007) (district court retains jurisdiction where non-citizen is not challenging the administrative removal order). Here, again, the court finds that the petitioner is not directly or indirectly challenging the validity of the order of removal against him. This is demonstrated by the fact that, even if the court grants the petitioner the relief he seeks and allows him to stay in the United States to complete the waiver process, the petitioner's order of removal will remain untouched and, in fact, whether or not the petitioner gets a favorable ruling on his application for waiver, ultimately, he will need to leave the United States at the end of the process. Accordingly, because the petitioner is not bringing a challenge to his removal order, the court finds that §§1252(a)(5) and (b)(9) do not operate to strip this court of jurisdiction over the petitioner's request relating to the waiver process. Cf. Achbani v. Roman, 2017 WL 4227649 (D.Conn. Sept. 22, 2017) (Finding that the plaintiff was claiming a right to remain in the United States, the court held that it lacked jurisdiction under the reasoning of Delgado v. Quarantillo, 643 F.3d 52 (2d Cir. 2011)).

At this juncture, the court should note that, to the extent that the petitioner seeks a stay of his removal until he exhausts his remedies with respect to his motion to reopen his immigration proceedings, that would be a

direct challenge to his removal order and the court does not have jurisdiction over that aspect of the petitioner's filing under §1252. See e.g., Sharif v. Ashcroft, 280 F.3d 786, 787-88 (7th Cir. 2002) (holding that under §1252, the district court lacked jurisdiction to issue a writ of habeas corpus that would stay the execution of a removal order pending the BIA's consideration of petitioners' motion to reopen). Therefore, the court will not consider the petitioner's claims to this extent.

Having determined that this court has jurisdiction to consider the petitioner's request for relief relating to his right to pursue the waiver process, the court must determine whether the petitioner is, in fact, entitled to the injunctive relief he seeks. In determining whether to grant injunctive relief, courts within the Third Circuit consider the following factors: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest. Rogers v. Corbett, 468 F.3d 188, 192 (3d Cir. 2006). See also United States v. Bell, 414 F.3d 474, 478 n.4 (3d Cir. 2005) (citing ACLU of N.J. v. Black Horse Pike Reg'l Bd. of Educ., 84 F.3d 1471, 1477 n.2 (3d Cir. 1996) (en banc)).

While each factor need not be established beyond a reasonable doubt,

they must combine to show the immediate necessity of injunctive relief. Stilp v. Contino, 629 F.Supp.2d 449, 457 (M.D. Pa. 2009) (citing Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002)). While the moving party must produce evidence sufficient to convince the court that all four factors favor injunctive relief and the court must endeavor to balance all four factors, "[a] failure to show a likelihood of success or a failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." Jones v. Taylor, 2013 WL 1899852 (M.D. Pa. May 7, 2013) (quoting In re Arthur Treacher's Franchise Litig., 689 F.2d 1137, 1143 (3d Cir. 1982)).

With respect to the first factor, the court finds that the petitioner has demonstrated a likelihood of success on the merits. The petitioner's action is based, in part, on the APA, which authorizes a court to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. §706(2)(A). "[R]ules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency," and a failure to follow those rules without justification is arbitrary, capricious and an abuse of discretion. Leslie v. Att'y Gen. of U.S., 611 F.3d 171, 175 (3d Cir. 2010).

Here, DHS has created a process for individuals like the petitioner to use to apply for a waiver. Failing to allow the petitioner the right to seek such

a waiver without justification constitutes a lack of regard for the regulations that DHS has created. Respondents' attempt to remove the petitioner while he engages in that process is arbitrary, capricious and an abuse of discretion, and violates the petitioner's rights under the APA.[4] Therefore, this factor weighs in his favor.

Considering the second factor, there is little doubt that the petitioner and his family will be irreparably harmed if the petitioner is removed before he can complete the waiver process. See Padilla v. Kentucky, 559 U.S. 356, 365 (2010) ("We have long recognized that deportation is a particularly severe 'penalty[.]") (citation omitted). The petitioner would be returned to Angola, a country he has not lived in for over nineteen (19) years. As discussed above, the petitioner does not have a criminal record. He is a hard working, tax-paying individual, who is the sole support for his wife and four children. To remove the petitioner before he has the opportunity to complete the waiver process, a process created to allow families to stay together while seeking such relief, would cause irreparable harm to both the petitioner and his family.

As for the third factor, this also weighs in favor of the petitioner. Any harm to the government caused by temporarily staying the petitioner's removal is outweighed by the harm the petitioner and his family would incur

[4]On this basis, the court need not reach the petitioner's Fifth Amendment claim. See e.g., Torres v. U.S. Dep't of Homeland Sec., 2017 WL 4340385, at *6 (S.D.Cal Sept. 29, 2017).

if the petitioner were indefinitely separated from his family by way of removal before completion of the waiver process.

Finally, granting the petitioner this limited form of relief is in the public interest. Allowing the petitioner a stay of removal pending his completion of the provisional waiver process would require DHS to follow its own rules and regulations and would bar any arbitrary and capricious action toward undocumented immigrants such as the petitioner.

As the above factors for injunctive relief collectively weigh in favor of the petitioner, the court finds that the petitioner has the right to a stay of removal while he completes the waiver process. Under United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954), a government agency is not free to disregard its own regulations, and when the government creates a regulatory process for seeking relief, that process creates “a right to seek relief” even if there is no “right to the relief itself.” De Jesus Martinez, 341 F.Supp.3d at 409 (citing Arevalo v. Ashcroft, 344 F.3d 1, 15 (1st Cir. 2003)). Here, DHS’s regulations create the right to seek the provisional waiver even if there is no right to the waiver itself. Therefore, the petitioner has a right to complete the provisional waiver process and for a stay of removal while he does so.[5]

---

[5]The court notes that the petitioner’s Form I-130 was approved on March 19, 2018. The petitioner contends that he and his wife were in the process of gathering the requisite documents to proceed with the waiver process when his order of supervision was revoked and he was arrested on (continued...)

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Court found that detention is generally permitted to exceed the 90 days authorized by the Immigration and Nationality Act ("INA") for a "period reasonably necessary to secure removal." Id. at 699-700. However, when removal is no longer "reasonably foreseeable," continued detention is not permitted by the INA. Id. Here, in light of this decision, the petitioner's removal is no longer reasonably foreseeable and his continued detention would be unreasonable. Therefore, the court will direct that the petitioner be released from custody pending the completion of the provisional waiver process.

In light of the foregoing, an appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: October 24, 2019**

19-1717-01.wpd

---

[5](...continued)
September 27, 2019, some eighteen (18) months later. Neither party has provided that there is a time frame within which the petitioner was required to file his Form I-212 after the approval of the Form I-130. Eighteen (18) months seems more than an adequate amount of time to proceed with the process. The petitioner is therefore advised that, as he has already had eighteen (18) months to gather his materials in order to proceed with the waiver process, he should act expeditiously in the filing of such upon his release.